NOTICE:  This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press.  Errors may be reported by email at the following address: reporter@courts.state.nh.us.  Opinions are available on the Internet by 9:00 a.m. on the morning of their release.  The direct address of the court's home page is: https://www.courts.nh.gov/our-courts/supreme-court

THE SUPREME COURT OF NEW HAMPSHIRE

_____

10th Circuit Court-Derry Family Division
No. 2022-0124


PETITION OF THE STATE OF NEW HAMPSHIRE

Argued: October 4, 2022
Opinion Issued: December 16, 2022


John M. Formella, attorney general, and Anthony J. Galdieri, solicitor general (Sam M. Gonyea, attorney, on the brief and orally), for the State.

Thomas Barnard, senior assistant appellate defender, of Concord, on the brief and orally, for the respondent.

DONOVAN, J.  The State filed a petition for original jurisdiction challenging an order of the Circuit Court (Zaino, J.) granting the respondent's motion to dismiss a juvenile delinquency petition.  The trial court ruled that the State failed to comply with RSA 169-B:6, IV(b) (2022) because no "manifestation review" had occurred prior to the filing of the delinquency petition.  As we explain in greater detail in this opinion, the term "manifestation review," RSA 169-B:6, IV(b), in the context of a juvenile delinquency petition resulting from conduct in a school setting by a student with a disability, refers to a process whereby a school, the student's parents, and other parties review the student's individualized education plan (IEP) and

other relevant information to determine whether the alleged misconduct stemmed from the student's disability or the school's failure to implement the student's IEP. See 20 U.S.C. § 1415(k)(1)(E).

In support of its petition, the State argues that RSA 169-B:6, IV(b) incorporates 20 U.S.C. § 1415(k)(1)(E) in its entirety, including the provision exempting a manifestation review in circumstances described in 20 U.S.C. § 1415(k)(1)(B). We conclude that the trial court correctly determined that RSA 169-B:6, IV(b) is ambiguous, but the broader purpose of RSA chapter 169-B supports the interpretation that RSA 169-B:6, IV(b) requires a manifestation review in all instances prior to the filing of a delinquency petition. We therefore hold that the phrase "a manifestation review pursuant to 20 U.S.C. section 1415(k)(1)(E)," RSA 169-B:6, IV(b), incorporates only the procedural requirements set forth in 20 U.S.C. § 1415(k)(1)(E) regarding what constitutes a manifestation review and not the exemption provision. Accordingly, we affirm.

I. Facts

The following facts are agreed upon by the parties or are otherwise supported by the record. In October 2021, the respondent, at the time a student at a New Hampshire school, allegedly struck a fellow student on the back of the head during the school day. Consequently, the school suspended the respondent for no more than ten days.

Approximately two weeks later, the State filed a delinquency petition charging the respondent with simple assault. RSA 169-B:6, IV requires the State to obtain assurance from the school district that, prior to the filing of the petition, if the child has a disability, "a manifestation review pursuant to 20 U.S.C. section 1415(k)(1)(E) occurred." The school confirmed that it had suspended the respondent after the incident and identified the respondent "as a child with a disability according to RSA 186-C:2, I," but stated that "[a] manifestation review [had] not been warranted."

In January 2022, the court held an adjudicatory hearing on the delinquency petition. At that hearing, the respondent moved to dismiss the petition based upon the school's failure to hold a manifestation review, as required under RSA 169-B:6. The State countered that a manifestation review was unnecessary because RSA 169-B:6, IV(b) only requires a manifestation review when 20 U.S.C. § 1415(k)(1)(E) requires one, and the federal statute exempts such reviews when a student is suspended for ten days or fewer as described in 20 U.S.C. § 1415(k)(1)(B).

Thereafter, the trial court granted the motion without prejudice. It ruled that "RSA 169-B:6, IV(b) require[s] a manifestation review as procedurally described in 20 U.S.C. 1415(k)(1)(E) regardless of the duration of the suspension or other exclusions potentially available under 20 U.S.C.

2

1415(k)(1)(B)." In reaching this conclusion, the court first determined that the term "pursuant to" as it appears in RSA 169-B:6, IV(b) is ambiguous. Next, the court considered the purpose of the statute as stated in RSA 169-B:1 and our decision in In re Russell C., 120 N.H. 260, 266-67 (1980), and ruled that the statute's purpose supported the respondent's interpretation that RSA 169-B:6, IV(b) requires a manifestation review in all circumstances. Subsequently, the State moved for reconsideration, which the court denied. This petition seeking review followed.

## II. Analysis

This case raises a question of statutory interpretation. At issue is the extent to which RSA 169-B:6, IV(b) incorporates 20 U.S.C. § 1415(k)(1)(E). The State contends that RSA 169-B:6, IV(b) incorporates subparagraph (E) of the federal statute in its entirety, including the exemption provision in the first clause of the statute. In contrast, the respondent contends that the reference to subparagraph (E) in RSA 169-B:6, IV(b) is limited to the definition of what constitutes a manifestation review and excludes the exemption provision.

The interpretation of a statute presents a question of law that we review de novo. See State v. Pinault, 168 N.H. 28, 31 (2015). In matters of statutory interpretation, the intent of the legislature is expressed in the words of the statute considered as a whole. See id. We first look to the language of the statute itself, and, if possible, construe that language according to its plain and ordinary meaning. Id. We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language the legislature did not see fit to include. Id. We interpret statutes in the context of the overall statutory scheme and not in isolation. Id. Moreover, we construe all parts of a statute together to effectuate its overall purpose and to avoid an absurd or unjust result. Petition of Carrier, 165 N.H. 719, 721 (2013). This review enables us to interpret statutory language in light of the policy or purpose sought to be advanced by the statutory scheme. Id. If a statute is ambiguous, however, we consider legislative history to aid our analysis. Id.

We begin our analysis by setting forth the relevant statutory framework. RSA 169-B:6, IV describes the information that a school district must provide to a court prior to the juvenile's initial appearance in cases of delinquency petitions. It provides:

> When a school official, including a school resource officer assigned to a school district pursuant to a contract agreement with the local police department, or a local police department as a result of a report made by a school official or school resource officer, files a petition involving a minor with a disability pursuant to RSA 186-C, upon submission of a

3

juvenile petition, but prior to the child's initial appearance, <u>the legally liable school district shall provide assurance that prior to its filing</u>:

. . .

(b)  If the school district has determined that the child is a child with a disability, <u>a manifestation review pursuant to 20 U.S.C. section 1415(k)(1)(E) occurred</u>.

RSA 169-B:6, IV(b) (emphases added).

20 U.S.C. § 1415(k)(1)(E), titled "Manifestation determination," provides the federal requirements for when and how to conduct a manifestation review. This federal statute provides, in relevant part:

<u>Except as provided in subparagraph (B)</u>, within 10 school days of any decision to change the placement of a child with a disability because of a violation of a code of student conduct, the local educational agency, the parent, and relevant members of the IEP Team (as determined by the parent and the local educational agency) shall review all relevant information in the student's file, including the child's IEP, any teacher observations, and any relevant information provided by the parents to determine—

(I) if the conduct in question was caused by, or had a direct and substantial relationship to, the child's disability; or
(II) if the conduct in question was the direct result of the local educational agency's failure to implement the IEP.

20 U.S.C. § 1415(k)(1)(E)(i) (emphasis added).  In turn, 20 U.S.C. § 1415(k)(1)(B) authorizes a school to "remove a child with a disability who violates a code of student conduct from their current placement to an appropriate interim alternative educational setting, another setting, or suspension, for not more than 10 school days."  As a result, when subparagraph (E) is read in tandem with subparagraph (B), the federal statute does not require a manifestation review for situations described in subparagraph (B), including suspensions for ten days or fewer.

RSA 169-B:6, IV requires the "legally liable school district" to assure the court that prior to the filing of a delinquency petition, "a manifestation review pursuant to 20 U.S.C. section 1415(k)(1)(E) occurred."  As set forth in 20 U.S.C. § 1415(k)(1)(E), a manifestation review determines whether a student's misconduct stemmed from the student's disability.  The review process engages the school, parents, and members of the student's IEP team to review the student's IEP and other relevant information and determine whether the student's disability or the school's failure to implement the student's IEP caused the student's misconduct.  20 U.S.C. § 1415(k)(1)(E).  If either one of

4

these determinations is made, then the student's conduct is considered to be a manifestation of his or her disability.  Id.  If the conduct is a manifestation of the student's disability, then, depending on the student and the conduct at issue, the school may conduct a behavioral assessment, utilize a behavioral intervention plan, and return the student to his or her original educational setting.  20 U.S.C. § 1415(k)(1)(F); see RSA 169-B:6, IV(c) (providing that schools should follow the process articulated in 20 U.S.C. § 1415(k)(1)(F) if the conduct was a manifestation of the child's disability).

Turning to the merits, both parties assert that the language of RSA 169-B:6, IV is unambiguous and that a plain and ordinary reading of the statute supports their respective interpretations.  The parties disagree, however, as to the extent that the state statute incorporates the federal law.  Thus, the only issue before us is whether RSA 169-B:6, IV incorporates 20 U.S.C. § 1415(k)(1)(E) in its entirety, including the exemption set forth in subparagraph (B), or whether the statute incorporates just the manifestation review procedures set forth in subparagraph (E).

The State observes that, as we ruled in Contoocook Valley School District v. State of New Hampshire, 174 N.H. 154, 164 (2021), "[t]he legislature's intent to incorporate by reference must be clear."  It then posits that "if the legislature intends to incorporate a provision by reference to a limited extent only, it must [also] make the extent to which it intends to limit the incorporation clear."  Because the legislature unambiguously chose to incorporate the federal statute, without limitation, the State maintains that the legislature intended to incorporate 20 U.S.C. § 1415(k)(1)(E) in its entirety, including its reference to the exemption in subparagraph (B), into RSA 169-B:6, IV(b).

The respondent counters that the plain language of RSA 169-B:6, IV requires assurances that a manifestation review occurred whenever a school official or school resource officer files or initiates the filing of a juvenile delinquency petition alleging misconduct by a minor student with a disability.  With respect to the statute's reference to the federal law, the respondent maintains that this reference is limited to 20 U.S.C. § 1415(k)(1)(E)'s description of a manifestation review and the consequences of a manifestation determination.  The respondent observes that the question before us is not whether the federal law requires assurances that a manifestation review occurred, but whether RSA 169-B:6, IV required such assurances.

Furthermore, the respondent argues that had the legislature intended to require school districts to merely assure a court that schools had complied with any federal obligation to conduct a manifestation review, then RSA 169-B:6, IV(b) would have been phrased differently — to require that the school districts comply with the process set forth in the federal law.  In support of this argument, the respondent observes that the language set forth in the very next provision of RSA 169-B:6, IV includes language requiring assurance that, "[i]f

5

the child's conduct was determined to be a manifestation of the child's disability, the school district followed the process set forth in 20 U.S.C. section 1415(k)(1)(F)."  RSA 169-B:6, IV(c).

We conclude that both parties' respective constructions of RSA 169-B:6, IV are reasonable and consistent with the statutory language.  Similarly, reasonable minds may disagree with our colleagues' conclusion that the statute unambiguously incorporates the federal exemption to the manifestation review requirement.  Accordingly, we rule that the statute is ambiguous as to the extent that it incorporates the federal statute.  See State v. Folds, 172 N.H. 513, 524 (2019).

We agree with the trial court that, when considered in light of the purpose of RSA chapter 169-B as articulated in RSA 169-B:1, RSA 169-B:6, IV(b) requires the legally liable school district to conduct a manifestation review prior to the filing of the delinquency petition, regardless of the length of time that the school suspended the student.  Accordingly, we conclude that the incorporation of 20 U.S.C. § 1415(k)(1)(E) into RSA 169-B:6, IV(b) is limited to the definition of what constitutes a manifestation review and does not include the provision exempting situations described in 20 U.S.C. § 1415(k)(1)(B).

RSA 169-B:1 articulates the purpose of RSA chapter 169-B, which governs delinquent children.  It provides that RSA chapter 169-B "shall be liberally interpreted" to effectuate the articulated purposes and policies.  RSA 169-B:1.  These purposes and policies include, inter alia: (1) encouraging the minor's "moral, mental, emotional, and physical development" by providing the minor with necessary "protection, care, treatment, counselling, supervision, and rehabilitative resources"; (2) "[c]onsistent with the protection of public interest," promoting the minor's acceptance of personal responsibility and appreciation of the consequences of the minor's delinquent actions; (3) keeping the minor, when possible, "in contact with the home community and in a family environment" and only separating the minor and parents when "clearly necessary for the minor's welfare or the interests of public safety"; and (4) providing "effective judicial procedures" and ensuring parties have a fair hearing.  RSA 169-B:1, I-IV.

RSA chapter 169-B is part of a comprehensive juvenile justice system that has as its primary concern the welfare of the child.  In re Trevor G., 166 N.H. 52, 54 (2014).  It guarantees children their constitutional rights, and encourages the use of rehabilitative and treatment resources whenever possible.  Id.; see also In re Russell C., 120 N.H. at 266.  We have stated that the legislative purpose of the juvenile laws is not penal, but protective; that the child shall not be punished for breach of law or regulation, but to provide the child with an opportunity to become a worthy citizen.  State v. Smagula, 117 N.H. 663, 666 (1977).  The primary goal of the law is to treat and not to punish.  In re Russell C., 120 N.H. at 266.

6

Consistent with the legislative mandate, we construe the statute liberally and interpret RSA 169-B:6, IV(b) to require a manifestation review in all instances, which effectuates the statute's purpose in several ways. See RSA 169-B:1; see also, e.g., Petition of State of N.H. (Disclosure of Juvenile Records), 172 N.H. 493, 499 (2019) (construing RSA chapter 169-B "liberally to effect its purpose of rehabilitating delinquent minors"); State v. Smith, 124 N.H. 509, 514 (1984) (considering the purposes and policies in RSA 169-B:1 as well as the mandate to liberally interpret RSA chapter 169-B). The manifestation review prioritizes resolving a disabled student's misconduct within the educational setting by engaging parents, teachers, and the school and utilizing alternative behavioral strategies, thus providing "treatment, counselling, supervision, and rehabilitative resources" to encourage the student's "wholesome" development. See RSA 169-B:1, I; see also 20 U.S.C. § 1415(k)(1)(E)-(F). If the manifestation review determines that the student's conduct was a manifestation of the student's disability, the student, absent special circumstances, is returned to his or her original educational setting, thus "keeping a minor in contact with the home community and in a family environment." See RSA 169-B:1, III; see also 20 U.S.C. § 1415(k)(1)(F)(iii).

Moreover, requiring a manifestation review in all instances under RSA 169-B:6, IV(b) achieves another principal goal of the juvenile delinquency statute: "to create procedural safeguards sufficient to protect individual rights against the vicissitudes of unlimited discretion." In re Trevor G., 166 N.H. at 54; see also RSA 169-B:1, IV; In re Russell C., 120 N.H. at 266-67 (interpreting the juvenile delinquency statute to impose a mandatory time limit that favors the juvenile based on the legislature's concern for procedural due process). Because the school unilaterally decides the duration of the student's suspension, to interpret the statute otherwise would essentially allow a school unlimited discretion to determine the amount of process that a student with a disability receives in those cases in which a delinquency petition is filed. If the school removes the student from the student's educational setting for ten days or fewer, then the student would not receive a manifestation review, but if the school removes the student for more than ten days, then the student would receive one. See 20 U.S.C. § 1415(k)(1)(B), (E). We conclude that the legislature did not intend to grant school districts that degree of discretion.

Our interpretation is further supported by the fact that, as both parties agree, the legislature enacted RSA 169-B:6, IV at a time when school districts frequently referred disabled students to the juvenile justice system for discipline rather than internally addressing the student's misconduct. Denying a student with a disability a manifestation review if he or she is removed from his or her education setting for ten days or fewer would encourage school districts to limit the duration of suspensions rather than address the problem that the legislature sought to remedy in enacting RSA 169-B:6, IV.

7

### III. Conclusion

For the foregoing reasons, we affirm and hold that whenever a delinquency petition is to be filed pursuant to RSA 169-B:6, IV(b) and the legally liable school district has determined that the child is a child with a disability according to RSA 186-C:2, I, then a manifestation review must be performed prior to the filing of the delinquency petition. Of course, if the legislature disagrees with our construction of RSA 169-B:6, IV, it is free, within constitutional limits, to amend the statute accordingly.

### Affirmed.

HICKS and BASSETT, JJ., concurred; MACDONALD, C.J., and HANTZ MARCONI, J., dissented.


MACDONALD, C.J., and HANTZ MARCONI, J., dissenting. Because we disagree with the majority that RSA 169-B:6, IV(b) (2022) is ambiguous, we respectfully dissent.

RSA 169-B:6, IV sets forth the information that a school district is required to provide to the trial court before a juvenile's initial appearance in a case involving a delinquency petition. Under the statute, "the legally liable school district shall provide assurance that prior to its filing" of the delinquency petition, "[i]f the school district has determined that the child is a child with a disability, a manifestation review <u>pursuant to</u> 20 U.S.C. section 1415(k)(1)(E) occurred." RSA 169-B:6, IV(b) (emphasis added). The ordinary meaning of "pursuant to" is "[f]ollowing upon, consequent and in conformance to; in accordance with." Oxford English Dictionary, https://www.oed.com/view/Entry/155073?redirectedFrom=pursuant#eid (last visited Nov. 18, 2022).

In accordance with section 1415(k)(1)(E) of the federal law, "[e]xcept as provided in subparagraph (B)," a manifestation review is required to take place "within 10 school days of any decision to change the placement of a child with a disability because of a violation of a code of student conduct." 20 U.S.C. § 1415(k)(1)(E). Subparagraph (B) creates an exception to the manifestation review requirement when a school has removed "a child with a disability who violates a code of student conduct from their current placement to an appropriate interim alternative educational setting, another setting, or suspension, for not more than 10 school days." 20 U.S.C. § 1415(k)(1)(B). Accordingly, under RSA 169-B:6, IV(b), "a manifestation review pursuant to 20 U.S.C. section 1415(k)(1)(E)" need not occur if a child with a disability is suspended for "not more than 10 school days." RSA 169-B:6, IV(b); 20 U.S.C. § 1415(k)(1)(B), (E).

8

The majority's determination that "the phrase 'a manifestation review pursuant to 20 U.S.C. section 1415(k)(1)(E)'" in RSA 169-B:6, IV(b) "incorporates only the procedural requirements set forth in 20 U.S.C. § 1415(k)(1)(E) regarding what constitutes a manifestation review and not the exemption provision" misapplies our rules of statutory construction.  Under such rules, we "give effect to every word of a statute whenever possible . . . and will not consider what the legislature might have said or add language that the legislature did not see fit to include."  In re J.P., 173 N.H. 453, 460 (2020) (citations omitted).  In RSA 169-B:6, IV(b), the legislature plainly directed without limitation that a manifestation review occur in accordance with federal law.  Nonetheless, the majority reads out of the federal statute the phrase "[e]xcept as provided in subparagraph (B)."  Although the legislature could have said that only the procedural requirements set forth in the federal statute apply, it did not do so.  As the majority suggests, there may be worthy policy rationales for so limiting the application of section 1415(k)(1)(E).  But, we are constrained to apply the words the legislature actually used.

Given that the language of RSA 169-B:6, IV(b) unambiguously expresses the legislature's directive to incorporate the federal exemption to the manifestation review requirement and that the respondent in this case was suspended for not more than ten school days, we would reverse the trial court's order granting the respondent's motion to dismiss.  Accordingly, we respectfully dissent.